# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Jamie Makupson, 281398, ) | CIVIL ACTION NO. 9:08-0983-RBH-BM |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Larry W. Powers, Warden of the ) | |
| Spartanburg County Jail and Lt. Church of ) | |
| the Spartanburg County Detention Facility, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate with the South Carolina Department of Corrections, alleges violations of his constitutional rights while he was incarcerated at the Spartanburg County Detention Center.

The Defendants filed a motion for summary judgement pursuant to Rule 56, Fed.R.Civ.P. on October 20, 2008. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on October 21, 2008, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to adequately respond, the Defendants' motion may be granted, thereby ending his case. After receiving an extension of time, Plaintiff filed a response in opposition to the Defendants' motion on January 6, 2009.

Defendants' motion is now before the Court for disposition.[1]

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for
(continued...)

1



**Background and Evidence**

Plaintiff alleges in his Verified Complaint[2] that on or about September 23, 2007, he was being held in Pod 3 at the Spartanburg County Detention Center when it was invaded by a SWAT team because the inmates in four of the forty-eight cells within Pod 3 had flooded their cells by throwing water under the cell doors. Plaintiff alleges that he was the fourth inmate in cell 19, which was originally designed to hold two inmates, while the four cells which were flooded were cells 13, 23, 29, and 35. Plaintiff alleges that there were also disruptions taking place in various cells, and that a total of thirty-one inmates were taken out of their cells and placed in "flex cuffs". These inmates were then taken to holding cells in the booking area of the facility, where they remained for four hours, still in their flex cuffs. Plaintiff was apparently one of these thirty-one inmates, as he alleges that his flex cuffs were then removed and he was instructed to grab a mattress from a pile outside the door, at which time he was escorted to "transfer" along with three other inmates.

Plaintiff alleges that he was held in holding cell number 3 from the early morning hours of September 23 until September 26, when he was escorted to Pod 5, which is in "lock-up". Plaintiff alleges that as of the filing of his complaint (dated November 2007), he was still in lock-up.[3]

---

[1](...continued)
all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this is dispositive motion, this Report and Recommendation is entered for review by the Court.

[2]In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.

[3]Plaintiff has now been transferred to the custody of the South Carolina Department of Corrections, and is housed in the Broad River Correctional Institution.



Plaintiff alleges that from September 26 through November 1 he was only allowed out of his room two days out of every seven days for ten minutes to shower and clean his room. Plaintiff further alleges that if his bed was not made properly he was not allowed to shower but once every seven days. As of November 1, Plaintiff was allowed to come out of his room for one hour every day.

Plaintiff further alleges that he has not been outside in the sunlight or "cold weather" since September 22, and that he along with the other thirty inmates have all been charged with inciting a riot. Plaintiff alleges that he and the other inmates have only been charged with this offense because the Warden of the facility is trying to obtain more money for the jail. Plaintiff also complains about having four men in every cell, and about being fed baloney sandwiches for breakfast, lunch and dinner for over one week. Plaintiff requests monetary damages against the Defendants. See generally, Verified Complaint, with attached exhibits [Grievance Forms].

In support of summary judgment in the case, the Defendant Larry Powers has submitted an Affidavit wherein he attests that he is the Director of the Spartanburg County Detention Center, and as such is responsible for the jail's overall operation and management. Powers attests that the Detention Center is a pre-trial detainment facility, and that on June 22, 2007, the Plaintiff was detained at the facility to await the disposition of pending charges. Powers attests that, due to space limitations and the moderate severity of Plaintiff's charges, he was placed in the general population even though he was a known management problem and the classification criteria of the Detention Center marked him for maximum security. See also Exhibit A to Powers' Affidavit.

Powers attests that Plaintiff was housed in Pod 3 at the time of the incident in question. On September 22, 2007 at around 7:49 in the evening, the officer in charge of Pod 3 (Officer Kunak) requested that all inmates return to their cells for a rebriefing on the rules of the Detention Center concerning noise control and inmate behavior. Prior to the rebriefing, Officer

3



Kunak had requested two times for the inmates to quiet down, but the inmates had failed to comply with these requests.  Powers further attests that numerous inmates made derogatory and threatening comments to Officer Kunak as they returned to their cells.  After the inmates had returned to their cells and closed the doors, Officer Kunak began the process of securing the cell doors when the inmates began kicking the doors and cursing at the Officer.  Officer Kunak advised the inmates that he would allow them out of their cells after they had quieted down, but some inmates continued to kick their cell doors and make disrespectful remarks.  Plaintiff was one of these inmates.  Powers also attests that Officer Kunak heard inmate Travis Austin advise the other inmates to start flooding their cells, and that other inmates began yelling obscenities at him and making physical threats.  Officer Kunak then contacted the Defendant Church, a lieutenant, advised him of the unrest in Pod 3, and requested additional officers for assistance in locating and removing the inmates causing the disturbance.  Church advised Kunak to leave the Pod on lock down until order could be restored.  <u>See also</u> Exhibit B to Powers' Affidavit.

Powers attests that despite numerous warnings and orders to quiet down, the inmates continued to act in a riotous manner.  Further, about twenty inmates in multiple cells flooded their toilets and sinks and kicked their doors in an attempt to incite the other inmates to riot.  Church arranged for the water to be cut off from the Pod to prevent additional flooding, and while turning off the water Church heard inmates declaring that they were going to "pop" their locks and assault Kunak.  Powers attests that the inmates continued to beat on their cell doors and to threaten Kunak, so he (Powers) instructed the officers to organize a response team to help Kunak regain control and to allow for the removal of the inmates from Pod 3.  Powers attests that the riotous actions of the inmates continued for several hours until the response team arrived and began to remove the inmates from the pod one cell at a time.  Inmates that were identified as having been involved in the



disturbance were removed to the holding cells in booking, while the remaining inmates were escorted to the recreation yard in another housing unit, following which the inmates who were not involved in the disturbance were returned to their cells.

Powers attests that the inmates who were involved in the riot were briefed on the expected behavior of inmates and instructed that riots and demonstrations were not allowed. Further, for three days after the riot, these inmates were fed bread, baloney and water at each meal in an effort to maintain order by not providing those inmates with any materials, such as utensils and food trays, that could be used for insurrection, to harm the staff or other inmates, or to stop up toilets.

Powers attests that the Detention Center has a policy in effect for emergency situations, such as a riot, and that this policy was followed on September 22, 2007. See also Exhibit C to Powers' Affidavit. Further, Powers attests that he followed South Carolina Jail Standard No. 1013 to temporarily suspend standards based on the emergency situation that existed at the Detention Center during the riot, and that in doing so, he reported this incident to the Director of the Jail and Prison's Inspection Division of the South Carolina Department of Corrections. See also Exhibit D to Powers' Affidavit.

Powers attests that because of the Plaintiff's past behavior problems and his involvement in the riot, Plaintiff was reclassified to maximum security (Pod 5) with all the usual restrictions, including that he be individually celled. Powers attests that, until a cell in maximum security was arranged for him on September 26, 2007, Plaintiff was left in a holding cell because, due to his behavior, it was impossible and dangerous to re-house him in the general population. Powers attests that, because inmates in maximum security are individually celled, they can exercise within their cells at any time, and that such inmates are also permitted an hour rotation for recreation. However, Powers attests that, even in maximum security, Plaintiff still defied the officers' authority

5



and constantly posed a problem to the security of the institution.  Powers attests that such inmates pose such a risk that allowing them out on rotation can threaten the safety of the staff and the security of the Detention Center.  Therefore, for his first few days in administrative segregation, Plaintiff was only allowed out of his room in restraints to shower.  After that time, Plaintiff was placed on the rotations schedule.  However, Powers attests that an inmate can lose his rotation based on his behavior, and that Plaintiff routinely did so by refusing direct orders and disturbing the pod.  See also Exhibit E to Powers' Affidavit.  Powers attests that, as a result of the disturbance at issue, thirty-one inmates, including the Plaintiff, where charged with inciting prisoners to riot.  See also Exhibit F to Powers' Affidavit.

Powers concedes in his affidavit that the Detention Center exceeds capacity at certain times, but attests that, in addition to notifying the appropriate county officials of the need for additional housing space, he makes every effort to ensure that the Detention Center is properly maintained.  Nonetheless, because of the numerous inmates housed by the Detention Center, inmates in the general population are celled in multiples, although because the Detention Center is a pre-trial detainment center, this situation is usually temporary.  Further, inmates in the general population are given the most freedom and extensive access to the day room, ordinarily six to seven hours per day.  Powers attests that all actions taken during the riot were essential to maintain good order and disciple and to gain control over unruly and belligerent inmates, and were not a form of punishment.  See generally Powers Affidavit with attached exhibits.

The Defendant Church has also submitted an affidavit wherein he attests that he is a lieutenant at the Spartanburg County Detention Center, and as such is responsible for implementing jail policies and maintaining order and security.  Church attests that on September 22, 2007 he was notified by Officer Kunak that the majority of the inmates in Pod 3 were getting out of control and

6



would not listen to him, and that he instructed Kunak to finish feeding the inmates dinner and then secure all the inmates in their cells in order to rebrief the inmates on the rules of the Detention Center. Approximately fifteen to twenty minutes later, Kunak called again stating that the inmates were starting to beat and bang on the cell doors and demanding to be let out of their cells. Further, several inmates were yelling that they would cause Officer Kunak bodily harm. Church attests that he then instructed Kunak to leave the pod locked down and to identify those inmates causing the disturbance and issuing threats. Shortly thereafter Kunak called again and stated that the situation in Pod 3 was deteriorating, with inmates in multiple cells flooding their toilets and sinks and inciting other inmates to do the same.

   Church attests that he told Kunak that he would cut off the water to the pod to prevent further flooding and send an officer with a video camera to document the actions of the inmates. Church attests that as he was turning off the water to Pod 3, he overheard the inmates yelling that they were going to "pop" the locks on their doors and assault Kunak. <u>See also</u> Exhibit A to Church Affidavit. Church attests that as he re-entered the Detention Center he watch the video of the situation in Pod 3 and determined that Kunak required assistance to regain order in this housing area. Church then called Powers and explained the situation, and was authorized to organize a response team to help Kunak regain control of the pod. Church attests that when the response team arrived they began to extract the inmates one cell at a time, causing injury to no inmate or officer. Inmates who were identified as not participating in the riot were escorted to the recreation yard in another housing unit, while those involved in the insurrection were removed to the holding cells in booking. After the cells in Pod 3 were searched and cleaned, the inmates who were not involved in the riot were returned to their assigned cells. <u>See also</u> Exhibit A to Church Affidavit. Church attests that he has at no time subjected Plaintiff to physical harm or made derogatory comments to him, and that



although flex cuffs were utilized on some of the inmates because of their behavior, the cuffs were left on for no more than thirty minutes. See generally Church Affidavit with attached exhibit.

Plaintiff has not provided any evidence or exhibits to the Court to support his claims or to oppose Defendants' motion for summary judgment other than those exhibits attached to his original verified complaint [grievance forms with attachments].

### Discussion

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

As employees of the Spartanburg County Detention Center, both Powers and Church are subject to suit for damages under § 1983 in their individual capacity. Gomez v. Toledo, 446 U.S. 635, 640 (1980); Inmates v. Owens, 561 F.2d 560 (4th Cir. 1977). Further, even though Plaintiff has been transferred to the South Carolina Department of Corrections, his claim for monetary damages survives his transfer. See Mawhinney v. Henderson, 542 F.2d 1, 2 (2d Cir. 1976). Nonetheless, after

8



careful review of the filings in this case as well as the arguments of the parties, the undersigned finds and concludes that Plaintiff's claims are without merit and that the Defendants are entitled to summary judgment.

As a pretrial detainee during the time period set forth in the Complaint, Plaintiff's conditions of confinement while he was incarcerated at the Spartanburg County Detention Center are evaluated under the Due Process Clause of the Fourteenth Amendment. Bell v. Wolfish, 441 U.S. 520,535 n.16 (1979); Ingraham v. Wright, 430 U.S. 651, 671-672, n. 40 (1977); Gray v. Farley, 13 F.3d 142, 146 (4th Cir. 1993); Cooper v. Dyke, 814 F.2d 941, 948 (4th Cir. 1987).

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee. For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law.

Bell, 441 U.S. at 535.

However, the mere fact that a detainee may be held in uncomfortable surroundings does not constitute punishment for purposes of a § 1983 claim, and the evidence before the Court does not show that Plaintiff was subjected to "punishment" such as to give rise to a constitutional claim under § 1983.

During the time period set forth in the Complaint, Plaintiff was a prisoner in a county jail facility, not a hotel. It should be expected that conditions in such a setting are often times less than ideal. Lunsford v. Bennett, 17 F.3d 1574, 1581 (7th Cir. 1994); Hadley v. Peters, No. 94-1207, 1995 WL 675990 *8 (7th Cir. 1995), cert. denied, 116 S.Ct. 1333 (1996) ["prisons are not required to provide and prisoners cannot expect the services of a good hotel."] (quoting Harris v. Fleming, 839 F.2d 1232, 1235 (7th Cir. 1988)).  The question, therefore, is whether the evidence presented to the Court shows that the Plaintiff was denied the minimal civilized measure of life's necessities, or that

9



the Defendants engaged in any conduct "for the very purpose of causing harm or with the knowledge that harm [would] result." <u>Farmer v. Brennan</u>, 114 S.Ct. 1970, 1978-1979 (1994); <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991); <u>see</u> <u>Martin v. Gentile</u>, 849 F.2d 863, 870 (4th Cir. 1988) [holding that the Fourteenth Amendment guarantees at least Eighth Amendment protections]. No such evidence has been presented in this case.

First, Plaintiff appears to argue in some of the material he has filed with the Court that the Defendants' conduct with respect to allowing him outdoor exercise or to go outside of his cell violated jail policy concerning how inmates are to be treated. However, even if the Court were to assume for purposes of summary judgment that such violations may have occurred, violations of jail policies or procedures do not amount to violations of *constitutional* rights prosecutable in this Court in a § 1983 civil rights action. <u>See</u> <u>Keeler v. Pea</u>, 782 F.Supp. 42, 44 C.D.S.C. 1992); <u>cf</u>. <u>Scott v. Hamidullah</u>, C/A No. 3:05-3027-CMC-JRM, 2007 WL 904803 *5 n. 6 (D.S.C. March 21, 2007) (citing <u>Riccio v. County of Fairfax, Virginia</u>, 907 F.2d 1459, 1469 (4th Cir. 1990)); <u>Johnson v. S.C. Dep't of Corrections</u>, No. 06-2062, 2007 WL 904826 at *12 (D.S.C. Mar. 21, 2007) ["Plaintiff's allegation that defendants did not follow their own policies or procedures, standing alone, does not amount to a constitutional violation."] (citing <u>Riccio</u>, 907 F.2d at 1469 [if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue]).

As for the remainder of Plaintiff's claims, none of the evidence provided by the Defendants, or even by the Plaintiff, supports a finding of a constitutional violation with respect to any of Plaintiff's complaints; rather, they simply reflect Plaintiff's dissatisfaction with the conditions of his confinement. Jail administrators are accorded wide deference in determining the policies and procedures which apply in such a setting, particularly when dealing with threats to institutional

10



security by inmates. See Block v. Rutherford, 468 U.S. 576, 584-585 (1984) [Prison administrators should be accorded wide ranging deference in the adoption and execution of policies that in their judgment are needed to preserve internal order and discipline and to maintain institutional security]; see generally Sweet v. South Carolina Department of Corrections, 529 F.2d 854, 859 (4th Cir. 1975) (en banc) [describing federal court's deference to prison administrators and all administrative matters unless the condition rises to the level of a constitutional violation]; cf. Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995) [Prison officials must be given "wide-ranging deference" with respect to their need to maintain order, discipline, and "institutional security"], reh'd denied, 75 F.3d 448 (9th Cir. 1995), cert. denied, County of Kern v. Anderson, 116 S.Ct. 306 (1995). [4]

        Plaintiff has provided no evidence to counter the Defendants evidence and exhibits showing that there was a disturbance in Pod 3 on the day in question, and in fact even concedes this in his verified complaint. The fact that inmates were placed in restraints while they were being moved following this disturbance should hardly be surprising, and certainly doesn't constitution a violation of Plaintiff's constitutional rights. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996) [because prison officials are entitled to use appropriate force to quell prison disturbances, and because these officials oftentimes must act under pressure without the luxury of a second chance, in order for a prisoner to prevail on an Eighth Amendment claim he must demonstrate that officials applied force maliciously and sadistically for the very purpose of causing harm]. Under the circumstances shown by the evidence, and particularly in light of the fact that jail officials had to

---

       [4]While many of the cases cited hereinabove deal with potential violations of the 8th Amendment, which is the standard for evaluating claims of convicted prisoners, the standard for considering Plaintiff's claims is essentially the same, even though at the time of the conduct at issue Plaintiff was a pre-trial detainee. See Martin, 849 F.2d at 870 [Holding that the 14th Amendment guarantees at least 8th Amendment protections]; Jurado Sanchez v. Periera, 525 F.Supp. 2d 248, 253 n. 3 (D. Puerto Rico 2007)[Standard applied the same].



relocate over thirty inmates, even assuming Plaintiff's claim that he was kept in restraints for several hours to be true, this does not create a genuine issue of fact as to whether a constitutional violation occurred. Stewart v. McManus, 924 F.2d 138, 143 (8th Cir. 1991)[Finding that use of flex cuffs in a good faith effort to restore discipline did not violate prisoner's constitutional rights]; cf. Williams v. Burton, 943 F.2d 1572 (11th Cir. 1991) [Eighth Amendment not violated when inmate kept in four-point restraints for 28 ½ hours after inmate cursed, threatened to kill officers and spat on them, threw bodily fluids at them, creating a disturbance in the prison.]; Green v. McCurry, No. 02-4326, 2003 WL 21826549 (N.D.Ill. Aug. 5, 2003). Plaintiff has also presented no evidence to show that the suffered a compensable injury as a result of this treatment. Strickler v. Waters, 989 F.2d 1375, 1380-1381, n. 9 (4th Cir. 1993)[The mere incantation of physical injury is inadequate to survive a motion for summary judgment]; Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999)[Without proof of more than de minimis physical injury, Plaintiff cannot maintain his claim].

The remainder of Plaintiff's claims are equally without merit. While Plaintiff may have, for a few days, been served only baloney with bread, this is not a violation of his constitutional rights. Harris v. Murray, 761 F.Supp. 409, 415 (E.D.Va. 1990) ["Plaintiff does not state a constitutional claim for inadequate nutrition merely because there were occasions when plaintiff considered his food inedible or inadequately warmed."]; Waring v. Meachum, 175 F. Supp.2d 230, 239 (D.Conn. 2001) [cold diet without fruits and vegetables for a short time period not a constitutional violation]; cf. Rust v. Grammar, 858 F.2d 411, 414 (8th Cir. 1988) [where "sandwich diet was imposed for a short time, with no resultant long-term adverse effects, it was a constitutionally permissible response to a disruptive situation"]; McLeod v. Scully, No. 81-3139, 1984 WL 692 at *2 (S.D.N.Y. July 30, 1984) [provision of two meals per day during eight to ten day lock down did not rise to the level of an Eighth Amendment violation]; Rish v. Johnson, 131 F.3d

12



1092, 1096 (4th Cir. 1997) ["only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement"]; see also Daigre v. Maggio, 719 F.2d 1310, 1313 (5th Cir. 1983)["To promote the important government interest in maintaining discipline, officials must have available sanctions that impose incremental disadvantages on those already in prison"]; In re Long Term Administrative Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 469 (4th Cir. 1999) ["Prison officials 'should be accorded wide-ranging deference in adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security'"] (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1979)); Overton v. Bazzetta, 539 U.S. 126, 132 (2003)["We must accord substantial deference to the professional judgment of prison administrators, who bear significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them"]; Johnson v. Williams, 768 F.Supp. 1161, 1165 (E.D.Va. 1991)["The simple fact that Plaintiff was served cold bag lunch meals in his cell does not indicate that the meals were less than nutritious or served under unsanitary conditions."] (citing Burgin v. Nix, 899 F.2d 733, 734 (8th Cir. 1990)(sacked meals held to provide an adequate diet)).

Plaintiff's complains about only minimal access to a shower and outside exercise similarly fail. Wilson v. Cook County Bd. of Commissioners, 878 F.Supp. 1163, 1167-1168 (N.D.Ill. 1995) [pretrial detainee failed to establish that overcrowding, inadequate staffing, inadequate opportunity for exercise, and inadequate grievance procedures in detention facility violated detainee's due process rights, as detainee failed to allege remedial injury]; Chavis v. Fairman, No. 94-1503, 1995 WL 156599 at * 5-6 (7th Cir. Apr. 6, 1995) ["generally, even dramatic restrictions on outdoor exercise do not violate [the due process clause] so long as prisoners have ample opportunity to enjoy indoor activity"]; Wilson v. Timko, No. 91-16055, 1992 WL 185446, at **2 (9th Cir. August 5,



1992) [temporary restriction of amenities was not cruel and unusual punishment]; Calhoun v. Wagner, Nos. 93-4075,93-4122, 1997 WL 400043 at *4 (E.D.Pa. July 14, 1997) [Temporary water shut-off did not give rise to a constitutional violation because of the legitimate purpose behind the action and the short duration of the alleged deprivation]; Kidwell v. Buchanan, No. 93-15056, 1993 WL 230224 at **1 (9th Cir. June 29, 1993) [Where temporary restriction of amenities was found not to be cruel and unusual punishment]; Isaac v. Fairman, No. 92-3875, 1994 WL 63219, * 5-6 (N.D.Ill. 1994) [allegation that prisoner was provided only one uniform and denied adequate opportunity to wash did not state claim].

        Finally, Plaintiff's complaints about being triple celled at the jail are also not, standing alone, sufficient to set forth a constitutional claim, as he has failed to present any evidence to show that the amenities provided did not meet his basic needs, nor has he shown that he was required to endure this housing for an extended period or that he suffered any remedial injury. See Strickler, 989 F.2d at 1382; Williams v. Griffin, 952 F.2d 820, 824 (4th Cir. 1991) ["[I]t is well established that 'double or triple celling of inmates is not per se unconstitutional.'"]; Farmer, 114 S.Ct. 1979 [noting that nothing in the evidence presented to the court showed that plaintiff was ever denied the minimal civilized measure of life's necessities, or that any defendant engaged in conduct "for the very purpose of causing harm or with the knowledge that harm [would] result"]; Wilson, 878 F.Supp. at 1167-1168 [pretrial detainee failed to establish that overcrowding, inadequate staffing, inadequate opportunity for exercise, and inadequate grievance procedures in detention facility violated detainee's due process rights, as detainee failed to allege remedial injury]; Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) [Dismissal of claim proper where inmate relied on conclusory allegations and failed to identify any actual injury]; Slezak v. Glover, No. 06-1122, 2008 WL 4308144 at * 1 (D.S.C. Sept. 15, 2008)[Double or triple celling is not per se unconstitutional]. Therefore, this claim is without merit.

14



<u>Cf</u>. <u>Shakka v. Smith</u>, 71 F.3d 162, 166 (4th Cir. 1995) ["In the context of a conditions-of-confinement claim, to demonstrate that a deprivation is extreme enough to satisfy the objective component of an Eighth Amendment claim, a prisoner must 'produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions', or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions"].

### **Conclusion**

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted**, and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

March 24, 2009

Charleston, South Carolina



15

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

